IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROSALINDA HERRERA HEREDIA, individually and as parent and guardian of AMY REYES-HERRERA, a minor; JUAN REYES TAPIA; LESLIE REYES-HERRERA; ANA HERRERA HEREDIA, individually and as parent and guardian of EIDAN HERRERA, a minor; EDUARDO HERNANDEZ HERRERA; SAMPSON KWAKU GYAN and GEORGINA TWUMWAA GYAN, both individually and as parents and guardians of MATILDA GYAN, a minor; AMANDA POMAA GYAN; FRANCIS KWADWO GYAN; ANGELINA ADOMA GYAN; MEUY CHANG SAETURN and BUON DUANGPRASAERT, both individually and as parents and guardians of AUBREY DUANGPRASAERT, a minor; GIFTY EGHAN; JOYCE MENSAH, individually and as parent and guardian of ERIC DIABOUR, a minor, and JUSTIN ALEXANDER,<br><br>       Respondents,<br><br>   v.<br><br>QUANG VUONG and HA TU HUYNH, husband and wife and their marital community; KIMBERLY H. VUONG and JIMMY D. VUONG, wife and husband and their marital community; VIP INTERNATIONAL REAL ESTATE GROUP, INC., a Washington corporation;<br><br>       Appellants, | No. 88253-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

and

JOHN DOES 1-10; and ABC
CORPORATIONS 1-10,

                              Defendants.

SMITH, J. — In 2021, a fire damaged the apartment building where the plaintiffs/respondents (collectively referred to as "Heredia") resided. Heredia initiated a complaint against the apartment owners, Quang Vuong and Ha Tu Huynh (Vuong) and the alleged property manager, VIP International Real Estate Group, Inc. (VIP) (collectively referred to as "Vuong"). VIP's insurer, Continental Casualty Insurance Co. (CNA), defended VIP under a reservation of rights.

The parties mediated and executed a settlement agreement. CNA did not attend the mediation. The trial court preliminarily approved the settlement agreement. After CNA received a copy of the settlement agreement, it intervened and a different trial court judge found the agreement unreasonable. Vuong moved to compel arbitration under the terms of the agreement. Heredia opposed the motion, claiming the entire agreement was unenforceable because the plaintiffs never would have entered into the agreement had they known about certain actions taken by defense counsel. The trial court ruled the settlement agreement unconscionable and denied Vuong's motion to compel arbitration. Vuong appealed, contending the trial court erred when it denied their motion to compel. Because the trial court exceeded its authority when it ruled the entire settlement agreement was unconscionable, we reverse and remand for proceedings consistent with this opinion.

FACTS

In December 2021, a fire broke out at an apartment complex in Renton, Washington, which led to injuries to the tenants and destroyed their property. Rosalinda Herrera Heredia, a tenant at the apartment, along with other tenants affected by the fire, initiated a complaint against several individuals and entities, including the building's owners, Quang Vuong and Ha Tu Huynh; the building's former owners, Kimberly and Jimmy Vuong; and VIP International Real Estate Group, Inc., the alleged property management company. Kimberly[1] owned VIP and was the registered agent for the company. Kimberly performed duties for the apartment complex, such as collecting rent, making repairs to the premises, and acting as a liaison between Heredia and the owners of the complex.

On April 5, 2022, Heredia served Kimberly and VIP with discovery requests. Heredia's interrogatories requested VIP describe any relationship it had with the apartment complex and include any documents it had containing information about its relationship to the property. In August, with no response from VIP, Heredia moved to compel VIP to answer. The court granted the motion, and VIP subsequently provided its answers. In its August 30 interrogatory responses, VIP maintained it had "no association with the [apartment complex] and would have no relevant evidence in this case." VIP acknowledged that Kimberly owned and ran VIP but maintained that "[a]lthough Kimberly performed tasks related to the [apartment complex], none of the work that she did for [the complex] was in any way relevant or related to her work with

_____

[1] For clarity, we refer to Kimberly Voung by her first name.

3

VIP international." Based on VIP's interrogatory answers, Heredia moved for nonsuit of VIP. Vuong did not oppose this motion. For unknown reasons, the court never ruled on the motion.

On April 8, 2022, three days after Heredia served their first discovery requests to VIP, VIP tendered the case to its insurer, CNA. Ten days later, CNA acknowledged receipt and requested VIP forward a copy of the complaint. On May 23, CNA followed up with VIP, stating, "[W]e have yet to receive any requested information needed on this matter to properly determine if any coverage would be triggered under ou[r] policy. We request again, a copy of the complaint and any other substantive documents which allow us to proceed with a coverage determination." VIP replied with the complaint and its answer to the complaint. CNA responded the same day asking VIP to provide a copy of the property management agreement. VIP did not respond, and on August 24, 2022, CNA reached out to VIP again and requested the property management agreement and "advise [it] if a General Liability claim has been established with the property owners carrier." VIP responded with the information for the apartment's general liability carrier but did not provide a property management agreement. VIP never provided CNA with a property management agreement, its August 2022 interrogatory responses, or a copy of the motion for nonsuit.

In December 2022, while the nonsuit motion was pending, VIP followed up with CNA, asserting it had not yet received a response from CNA concerning its tender request. VIP told CNA that CNA was "obligated to defend and indemnify [VIP] in this lawsuit." In January 2023, CNA acknowledged coverage subject to a

reservation of rights. CNA's letter stated, "We understand [VIP] was the property management company for the complex at the time of the incident." CNA requested updates on the matter, as well as copies of all "significant correspondence, documents, and court filings." In response, VIP sent CNA various discovery responses from the plaintiffs, but it did not include its own interrogatory answers and did not mention the pending nonsuit.

After VIP received the reservation of rights letter from CNA, Heredia and Vuong discussed the possibility of mediation. Initially, Heredia opposed mediation, noting,

> [T]he coverage disclosed to date only totals $1,500,000.[2] This amount would be significantly inadequate to address the damages of everyone involved, and we do not believe mediation would be helpful. Please disclose any umbrella or other excess coverage available for any of the defendants. If sufficient coverage is disclosed, we would be happy to schedule mediation.

The parties conferred on February 2, 2023, and afterward Heredia e-mailed VIP confirming $1,000,000 per claim in coverage was available from CNA. The parties do not dispute that during their conversation, VIP asked Heredia to withdraw their motion to nonsuit VIP. Heredia e-mailed VIP the next week:

> As a follow up to our conversation, you mentioned that it was premature to dismiss VIP from the suit, as discovery is ongoing and we have not taken depositions of any of the defendants.
>
> Please confirm that you believe that VIP dismissal is premature at this time, and we will strike our motion.

VIP replied in the affirmative.

---

[2] The $1,500,000 referenced in Heredia's e-mail consisted of $1,000,000 in coverage from Oregon Mutual Insurance Co. and $500,000 in coverage from Safeco Insurance.

5

On April 5, 2023, VIP sent an e-mail to CNA informing it of the upcoming mediation and requesting the name of the adjuster who would be attending on behalf of CNA. VIP followed up with CNA several times but never received a response concerning CNA's attendance at the mediation. On June 5, VIP sent mediation materials to CNA, including Heredia's mediation brief, which did not name VIP as a defendant, but stated, "Since defendants Quang Vuong and Ha Tu Huyng took ownership of the building in 2013, they did not officially hire anyone as property manager, but Kimberly Vuong functioned as an unofficial property manager since 2013." CNA did not reply.

The mediation took place on June 8, 2023, without CNA present. VIP proposed a covenant settlement judgment based on a bad faith claim against CNA. As support for this claim, VIP provided Heredia with the e-mails to CNA between April 5, 2023, and June 8, 2023. VIP did not provide Heredia with any of its earlier correspondence with CNA. At the end of mediation, the parties signed a CR 2A agreement. The CR 2A agreement outlined a tentative covenant judgment settlement, which included "a combination of payments of available policy limits plus a covenant judgment to be entered against the insured defendants, a covenant not to execute on that stipulated judgment against the insured defendants, and an assignment to the plaintiffs of the insureds' bad faith and other claims against [CNA]." The parties negotiated the terms of the settlement for five months, and the parties executed a final settlement agreement

in February 2024.[3]

The settlement agreement included several arbitration provisions:

[S]hould the court not find the Judgment Sum of eleven million dollars ($11,000,000) to be reasonable but does not determine another Judgment Sum amount to be reasonable . . . then arbitrator Paris Kallas will serve as arbitrator and will arbitrate the Plaintiff's damages.

. . .

If the court rejects the Stipulated Judg[]ment or any part of this Settlement Agreement, the Parties shall follow the agreed to arbitration process with Judge Kallas.

. . .

In the event of any dispute that cannot be resolved by the Parties arising out of this Settlement Agreement, the parties agree to resolve the claim through binding arbitration by Virginia DeCosta.

. . .

Should any provision of this Settlement Agreement prove to be invalid or unenforceable, remaining enforceable provisions of this Settlement Agreement shall remain in full force and effect and the Parties will use good faith efforts to revise this Settlement Agreement to comply with applicable laws and to carry out the purposes and intent of this Settlement Agreement.

On May 28, 2024, Heredia petitioned the court to find the covenant settlement reasonable under RCW 4.22.060. A copy of the settlement agreement was sent to CNA. After receiving notice of the settlement, CNA moved to intervene and challenge the settlement. CNA served Heredia and Vuong with discovery requests. VIP omitted its interrogatory answers from their discovery production to CNA. Only after CNA followed up with VIP asking it to

---

[3] Because some of the plaintiffs were minors, the trial court appointed a settlement guardian ad litem (GAL) to evaluate the settlement agreement. The GAL, an experienced insurance attorney, found that the "proposed settlement represents a reasonable, factually and legally sound compromise of plaintiffs' claims." Following the GAL's approval, Vuong distributed $2,000,000 to the plaintiffs, as was agreed to in the agreement.

7

confirm it had submitted all the interrogatory answers did VIP send its answers. After receiving VIP's answers, CNA deposed VIP's attorney, Rory Leid. Leid responded that he "ha[d] no recollection" to the following questions:

- Whether VIP had any involvement with the apartment complex;
- Whether any of the defendants in the case had been deposed;
- Whether he reviewed VIP's interrogatory answers; and
- Whether Heredia moved for voluntary nonsuit of VIP.

Ultimately, CNA requested the court to remove VIP from the lawsuit or, in the alternative, reject the settlement agreement and covenant judgment in their entirety because "any judgment amount against VIP is not reasonable, and because there is overwhelming evidence that the covenant judgment was the production [sic] of collusion and/or fraud."

At the hearing for the reasonableness petition, Heredia maintained the settlement agreement was a product of "arm's length negotiation facilitated by a professional mediator." Heredia stated that the evidence proved VIP was a property manager or, at least, Kimberly acted as its agent or alter ego. Heredia noted the phone number for VIP was the same as Kimberly's, and Kimberly associated herself with VIP on various platforms, including on VIP's website and Facebook page. When the court raised concerns about Leid's deposition and potential collusion, Heredia maintained Leid's responses had no bearing on whether the settlement amount was reasonable and whether VIP misled CNA was a question for a jury.

In its November 15, 2024 order, the court denied the petition to find the settlement reasonable. The court noted that "no judgment amount is appropriate

8

with respect to [VIP], because the evidence establishes that VIP had no involvement or connection with the apartment complex and fire that are the subject of this lawsuit. The settlement and covenant judgment are therefore unreasonable in their entirety." The court found that VIP's status as a defendant in the lawsuit "appears to be the product of bad faith, fraud, and/or collusion." The court relied on the following evidence:

- VIP's interrogatory answers stating VIP was not involved with the apartment complex;

- Heredia's motion for nonsuit;

- VIP's failure to provide CNA with its interrogatory responses;

- CNA's mistaken belief—based on VIP's misrepresentations— that VIP was the property management company for the apartment complex; and

- Heredia's subsequent withdrawal of the motion for nonsuit after VIP updated available insurance proceeds to include its policy with CNA.

The court made clear that in making its ruling, "the Court stresses that it does not find the judgment amount of $11,000,000 to be unreasonable. . . . Rather, the court finds only that the covenant judgment amount against VIP is unreasonable based on the evidence presented to the court." (Emphasis omitted.)

After the court denied approval of the settlement agreement, Vuong moved to compel arbitration. Heredia opposed the motion and moved for sanctions. Heredia claimed that, based on recently provided documents from VIP, VIP's nonresponse interrogatories, and the court's order finding the settlement agreement unreasonable, VIP had intentionally misled the plaintiffs,

9

the court, and CNA.[4]  Vuong opposed the motion, contending any disagreement between the parties concerning the settlement agreement should be arbitrated, based on the provisions in the agreement.

At the hearing on the motion to compel arbitration and for sanctions, the court began by reaffirming that "the reason [it] found that the settlement was not reasonable was because [it] had serious concerns about, frankly, the veracity and the fairness and what people knew at the time this settlement was reached." The court continued,

> And specifically, while you may not have asked me directly to sort of rescind the arbitration clause itself, and that opposing counsel's sort of stressing with his pleadings and the case law he provides, that unless there's a particular challenge to the arbitration clause itself, nonetheless, I do find that the entire backdrop of the agreement, the foundation of the agreement, was improper and unfair.

The court stated that there was, "if not fraud in the inducement, certainly misrepresentation that led to the parties entering into the agreement." The court concluded the settlement agreement was procedurally unconscionable based on the circumstances that led up to the agreement, including, "the manner in which the agreement was entered, which includes the arbitration clause, whether plaintiffs had a reasonable opportunity to understand the terms of the contract, and finally, whether the important terms were hidden in a maze of fine print."

---

[4] Heredia also noted that in January 2025, the District Court for the Western District of Washington denied VIP's motion to dismiss itself from an action brought by CNA seeking a judicial determination that it does not owe defense or indemnity to VIP with respect to this case.  The District Court found that CNA sufficiently pled that VIP "breached the Policy through its intentional misrepresentations."

Based on those reasons, the court found that enforcing the arbitration clause would violate anyone's "level of good conscience, and also would violate public policy by rewarding, in simple terms, the actions of wrongdoers." The court denied Vuong's motion to compel arbitration and set over the hearing for sanctions. Vuong appealed.[5]

ANALYSIS

Standard of Review

We review de novo a trial court's decision granting or denying a motion to compel arbitration. *Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 455, 268 P.3d 917 (2012). Generally, Washington favors arbitration, but the courts will invalidate an arbitration agreement when it is unconscionable. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 46, 470 P.3d 486 (2020). Whether an arbitration agreement is unconscionable "is a preliminary question for judicial consideration." *Burnett*, 196 Wn.2d at 46. The party opposing arbitration bears the burden of showing the arbitration agreement is not enforceable. *Burnett*, 196 Wn.2d at 46.

Agreement to Arbitrate

Vuong claims the trial court erred when it denied their motion to compel arbitration because the arbitration clause in the settlement agreement was valid and the court did not have authority to invalidate the entire agreement. Heredia contends the trial court did not err because the arbitration agreement (1) did not

---

[5] The lower court decided not to rule on Heredia's motion for sanctions given Vuong's appeal.

11

contemplate the dispute at issue, (2) lacked mutual assent, (3) was unconscionable, and (4) was barred by unclean hands.[6] We agree with Vuong that the arbitration clause was valid, and the court did not have authority to deem the entire settlement agreement unenforceable.

RCW 7.04A.060 addresses the validity of an agreement to arbitrate:

> (1) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of contract.
>
> (2) The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.
>
> (3) An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.

When determining whether a controversy is subject to an agreement to arbitrate, the court may not consider whether the controversy has merit, " 'but may determine only whether the grievant has made a claim which *on its face* is governed by the contract.' " *In re Marriage of Pascale*, 173 Wn. App. 836, 842, 295 P.3d 805 (2013) (alteration in original) (internal quotation marks omitted) (quoting *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula,* 130 Wn.2d 401, 413, 924 P.2d 13 (1996)).

When a party moves the court to compel arbitration, the court shall order the parties to arbitrate, "[u]nless the court finds that there is no enforceable

---

[6] Heredia also claims that under the invited error doctrine, Vuong is precluded from arguing the trial court's findings of fact were erroneous. But Vuong only requested that the court enter findings; they did not request the entry of specific findings; therefore, Vuong is not precluded from challenging these findings on appeal.

agreement to arbitrate." RCW 7.04A.070. Ordinary contract defenses, such as unconscionability, may be applied to invalidate an arbitration clause. *Waters v. A.A.A. Waterproofing, Inc.*, 151 Wn. App. 316, 321, 211 P.3d 454 (2009). But any doubts concerning the applicability of an arbitration clause should be resolved in favor of arbitration, because " 'Washington strongly favors arbitration.' " *Pascale*, 173 Wn. App. at 842 (quoting *Davis v. Gen. Dynamics Land Sys.*, 152 Wn. App. 715, 718, 217 P.3d 1191 (2009)).

1.  Issues Before the Court

Here, the trial court erred when it concluded the entire settlement agreement was unenforceable and denied Vuong's motion to compel arbitration, because the only issue before the court was the validity of the arbitration clause itself. Vuong's motion to compel was brought in response to the court's finding that the settlement agreement was not reasonable. When a motion is brought under RCW 4.22.060 to determine the reasonableness of the settlement agreement, "[a] hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence." The only issue before the court is the reasonableness of the amount to be paid; the court's determination does not affect the validity of the agreement as a whole. RCW 4.22.060(3) ("A determination that the amount paid for a release, covenant not to sue, covenant not to enforce judgment, or similar agreement was unreasonable shall not affect the validity of the agreement between the released and releasing persons."). Accordingly, any ruling the court made concerning the unreasonableness of the settlement agreement pertained only to the

"reasonableness of the amount to be paid." RCW 4.22.060(1).

Similarly, when Vuong brought the motion to compel arbitration, the only issue before the court was whether the arbitration clause was valid. Any underlying controversy, such as the amount of the settlement, or whether the settlement agreement was enforceable, shall be determined by the arbitrator. *See* RCW 7.04A.060(3); *see also In re Marriage of Bernard*, 137 Wn. App. 827, 832-33, 155 P.3d 171 (2007) (noting that judicial review of a motion to compel arbitration "is limited to whether the arbitration clause, viewed separately, is subject to traditional contract defenses such as fraud or unconscionability"). Any opinion the court had concerning the validity of the settlement agreement in its entirety should not have factored into its decision regarding the arbitration clause in particular. Accordingly, the trial court erred to the extent it considered the validity of the settlement agreement as a whole when ruling on Vuong's motion to compel arbitration.

2. Unconscionability

Heredia contends the trial court did not err when it denied Vuong's motion to compel because the arbitration clause was procedurally and substantively unconscionable. We conclude the agreement to arbitrate was not unconscionable.

An arbitration clause can be unconscionable under either of two theories: substantive unconscionability or procedural unconscionability. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 303, 103 P.3d 753 (2004). A party challenging an arbitration clause does not need to show both; either is sufficient to invalidate

14

an agreement.  *Alder v. Fred Lind Manor*, 153 Wn.2d 331, 345, 103 P.3d 773 (2004).

### a.  Procedural Unconscionability

Procedural unconscionability concerns "impropriety during the formation of the contract."  *Burnett*, 96 Wn.2d at 54.  An arbitration clause is procedurally unconscionable when "a party with unequal bargaining power lacks a meaningful opportunity to bargain, thus making the end result an adhesion contract."  *Burnett*, 96 Wn.2d at 54.  To determine if an arbitration clause is procedurally unconscionable, courts consider whether the party entering into the agreement had " 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print.' "  *Zuver*, 153 Wn.2d at 304 (alteration in original) (internal quotation marks omitted) (quoting *Nelson v. McGoldrick,* 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)).

Heredia contends the entire settlement agreement is procedurally unconscionable and unenforceable because the plaintiffs were induced by VIP's fraudulent misrepresentations.  Heredia relies on the trial court's oral ruling to argue the arbitration clause is procedurally unconscionable "given 'the entire backdrop of the agreement, the foundation of the agreement, was improper and unfair.' "  In making its ruling, the trial court specifically referenced *Burnett*, noting,

> I also find that there is procedural unconscionability here. And looking at *Burnett v. Pagliacci Pizza*, 196 Wash. 2d 38 from 2022—from 2020, rather, I look at these sort of circumstances of what led up to the settlement agreement, including the manner in which the agreement was entered, which includes the arbitration

15

clause, whether plaintiff's had a reasonable opportunity to understand the terms of the contract, and finally, whether the important terms were hidden in a maze of fine print to determine whether a party lacked any meaningful choice.

But *Burnett* is very different from the facts of this case. In *Burnett*, Pagliacci hired Steve Burnett as a delivery driver. 196 Wn.2d at 42. As part of Burnett's new employee orientation, Pagliacci gave Burnett multiple forms and told him to sign them so he could start working. *Id.* at 43. One of the forms Pagliacci required Burnett to sign before he started work was an employee relationship agreement (ERA). *Id.* Within the ERA was the condition, "On your own initiative you will learn and comply with the rules and policies outlined in our [employee handbook]." *Id.* Pagliacci provided Burnett with the employee handbook, which contained a mandatory arbitration policy. *Id.* Pagliacci did not require Burnett to read the employee handbook before signing the ERA. *Id.*

After Burnett was fired, he initiated a complaint alleging various wage related claims. *Id.* at 45. Pagliacci moved to compel arbitration under the arbitration agreement in the employee handbook. *Id.* Burnett opposed arbitration, contending the mandatory arbitration clause was procedurally and substantively unconscionable. *Id.* The Supreme Court accepted review[7] and held that the arbitration agreement was procedurally unconscionable because Burnett lacked meaningful choice, as he was required to sign the ERA before he could start working; the ERA did not mention arbitration; and the arbitration policy was not identified in the handbook's table of contents and was on page 18 of the

---

[7] The trial court denied Pagliacci's motion to compel arbitration and the court of appeals affirmed. *Burnett*, 196 Wn.2d at 45-46.

23-page handbook. *Id.* at 43.

The circumstances here are distinguishable. Heredia was represented by competent counsel, who had ample opportunity to review the terms of the settlement agreement, including the arbitration clause. As stated in Heredia's petition for order finding covenant settlement reasonable, "The parties reached a settlement during mediation, during arm's length negotiations between the parties through a mediator" and "the plaintiffs thoroughly investigated the defendants' claimed defense." Additionally, the arbitration clause was not hidden in the settlement agreement, and the parties unmistakably contemplated the benefits of mediation before agreeing to arbitration. No evidence exists to support a finding that Heredia lacked a meaningful choice when they agreed to arbitrate issues arising out of the settlement agreement. For these reasons, the arbitration clause is not procedurally unconscionable.

b. *Substantive Unconscionability*

An arbitration agreement is substantively unconscionable when " 'a clause or term in the contract is alleged to be one-sided or overly harsh.' " *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 898, 28 P.3d 823 (2001) (internal quotation marks omitted) (quoting *Nelson*, 127 Wn.2d at 131). In determining whether a provision is one-sided or overly harsh, courts have asked "whether the provision is shocking to the conscience, monstrously harsh, and exceedingly calloused." *Burnett*, 196 Wn.2d at 57.

Here, Heredia contends that because the trial court found the entire covenant judgment settlement unreasonable, any arbitration would be one-sided

and overly harsh. But Heredia provides no explanation for why the arbitration clause itself is one-sided or overly harsh and, as discussed *supra*, only the conscionability of the arbitration clause is at issue—not the entire settlement agreement. Because the arbitration clause does not favor one party over another and none of its terms are "shocking" or "exceedingly calloused," it is not substantively unconscionable.

3. Mutual Assent

Heredia contends the arbitration agreement cannot be enforced because no mutual assent existed at the time of formation. We disagree.

For an arbitration clause to be valid, mutual assent between the parties at the time of formation of the agreement must exist. *Burnett*, 196 Wn.2d at 48. Mutual assent means the parties manifest to each other their shared understanding to " 'the same bargain at the same time.' " *Burnett*, 196 Wn.2d at 48 (internal quotation marks omitted) (quoting *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388, 858 P.2d 245 (1993)). In the context of arbitration, " 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Burnett*, 196 Wn.2d at 48 (internal quotation marks omitted) (quoting *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 810, 225 P.3d 213 (2009)).

Here, Heredia contends no mutual assent existed because the plaintiffs were induced into signing the settlement agreement by VIP's fraudulent misrepresentations. Heredia cites to *Oregon Mutual Insurance Co. v. Barton* for the proposition that "[a]n insurance settlement induced by fraudulent

18

misrepresentations is void." 109 Wn. App. 405, 409, 36 P.3d 1065 (2001). But Heredia fails to include the next sentence in the opinion, which states "the misrepresentation must be relevant." *Barton,* 109 Wn. App. at 409. Whether VIP misrepresented its viable coverage under CNA is not relevant to whether the parties mutually assented to the arbitration clause. Because the only provision at issue here is the arbitration clause, Heredia cannot rely on misrepresentations relevant to the availability of coverage to claim the plaintiffs were induced into agreeing to arbitrate.[8] As RCW 7.04A.060 makes clear, "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." Because Heredia provides no evidence to support a claim that VIP's alleged fraudulent misrepresentations involved the arbitration clause and induced the plaintiffs into agreeing to arbitrate, mutual assent existed.

4. Unclean Hands

Heredia maintains Vuong's motion to compel arbitration was properly denied based on the equitable doctrine of "unclean hands." Vuong contends the doctrine of unclean hands is not applicable to the arbitration clause. We agree with Vuong.

Under RCW 7.04A.060(1), an agreement to arbitrate is valid and enforceable "except upon a ground that exists at law or in equity for the

---

[8] Vuong also maintains the trial court's findings that VIP made fraudulent misrepresentations were "founded on a fundamental misconception of what triggers an insurer's duty to defend." Because any representations VIP made about CNA's duty to defend are not at issue here, we need not address this allegation.

19

revocation of contract." Grounds based in law or in equity "refers to general contract defenses such as fraud, duress, or unconscionability." *Weidert v. Hanson*, 178 Wn.2d 462, 465, 309 P.3d 435 (2013). Unclean hands is an equitable defense. *Burt v. Dep't of Corr.*, 191 Wn. App. 194, 210, 361 P.3d 283 (2015). But our Supreme Court has held "[t]here is no support for the notion that a court may ignore an otherwise valid arbitration agreement on equitable grounds." *Weidert*, 178 Wn.2d at 465.

Here, even if Heredia can successfully argue that VIP had unclean hands concerning its representation of CNA's purported coverage, that is not reason to ignore an otherwise valid arbitration clause in the settlement agreement. Because Heredia's claim of unclean hands concerns the underlying terms of the settlement agreement, not the arbitration clause, the claim is not a basis to deny the motion to compel arbitration.

## Attorney Fees

Both Vuong and Heredia request attorney fees on appeal under the terms of the settlement agreement. RAP 18.1 provides that applicable law may grant a party the right to recover reasonable attorney fees or expenses on review. A party requesting fees under RAP 18.1 must provide argument and citation to authority "to advise the court of the appropriate grounds for an award of attorney fees as costs." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012).

Under RCW 4.84.330, when a contract provides for attorneys' fees and costs incurred in enforcing the contract to one of the parties, "the prevailing party, whether he or she is the party specified in the contract . . . or not, shall be entitled

to reasonable attorneys' fees in addition to costs and necessary disbursements." *See also Renfro v. Kaur*, 156 Wn. App. 655, 666, 235 P.3d 800 (2010) ("A party may be awarded attorney fees based on a contractual fee provision at the trial and appellate level."). According to the settlement agreement, "[t]he Parties will bear their own attorney's fees and costs incurred in connection with the preparation and execution of this Settlement Agreement, exclusive of the enforcement of this Settlement Agreement, which shall be interpreted under Washington law."

Because the trial court erred when it denied Vuong's motion to compel arbitration, the settlement agreement excludes enforcement of the agreement from the provision which provides that each party shall bear their own attorney fees, and because Vuong prevails on appeal, they may be entitled to fees.

The motion to arbitrate should be granted because the arbitration clause was not procedurally or substantively unconscionable. Accordingly, we reverse the trial court's order and remand for the parties to proceed with arbitration, and the issue of attorney fees shall be decided by the arbitrator.

_____

WE CONCUR:

_____          _____

21